In re. Silver State Broadcasting. Appellants Silver State Broadcasting, Golden State Broadcasting, and Major Market, LLC have submitted on the briefs. Talitha Gray Kozlowski, Counsel for Appalee, Michael Warren Carmel, Chapter 11 Trustee. Okay, so we will not be hearing spirited argument from our appellant today. Correct? Okay. I'm tempted to ask you if you want to reserve five minutes, but come on up. Come on up. Okay. Go ahead and make your appearance. Thank you. Good morning. May it please the Court, Talitha Gray Kozlowski on behalf of the appellee, Michael Carmel, the trustee for three different states, Golden State Broadcasting, Silver State Broadcasting, and Major Market Radio. Candidly, we weren't quite sure whether appellant would be appearing or not. I guess we gave them the option of not appearing, and they took us up on that. So there you go. Okay. Yes, thank you. I do believe our papers have addressed most of the issues in pretty significant detail, but I did want to highlight the application of 363M. The United Circuit has consistently affirmed the importance of finality in bankruptcy sales. And in this situation, we have an appeal from a sale order for seven radio stations and their translators to three separate purchasers. Each of those sales have closed. The properties have been transferred to the respective buyers between February 1st of 2024 and May 8th of 2024. We are now at a point where all three of the debtors have also confirmed their plans of organization, which have gone effective. And on the effective date, the sale proceeds have begun to be distributed out to the creditors. So these are certainly well on their way to being fully consummated. When we look at 363M, there are two requirements. The first is whether there's a state pending appeal. In this situation, not only was a stay not granted, a stay was never requested. The second is obviously the good-faith purchaser component. In this situation, I think it's really important to highlight that there is no dispute with respect to two of the three purchasers, Friends of KEXP and Autopilot. The only dispute did come with respect to BCY America. And, Your Honors, the Bankruptcy Court did make detailed good-faith findings in the record, and that's found at SCR 999 through 1003, as well as within the sale order itself. In this instance, to reverse, Your Honors, we would have to find that the Bankruptcy Court's findings were clearly erroneous and respectfully submit that they were not. When we look at what constitutes good-faith, the In re Eval case from the Ninth Circuit discusses that there must be an evidence of fraud or collusion or other attempts to take a grossly unfair advantage of the other bidders and submit that there's absolutely no evidence whatsoever of that in the record. Here, as the record proves, the Bankruptcy Court found that the auction was conducted consistent with the bid procedures that were properly noticed, ample time for marketing. We have an auction that was conducted in court. You had six qualified bidders and five active bidders in, again, a live auction. The Bankruptcy Court found that there was a robust auction with bidding, and again, the transcript is in the record describing all of those proceedings. We also have a situation where you had a stocking horse and the bids that ultimately resulted are 1.6 million in excess of that stocking horse bid with three buyers. It's somewhat, I think, unusually in an auction process, the Bankruptcy Court took the additional step of inquiring of every single bidder, whether they'd engaged any collusion, whether there had been... They acted independently in the bidding and specifically inquired of their process and what happened during the auction, and relied on those inquiries in making his good faith finding. The contention by the appellant is that BCY had engaged in conduct that they took umbrage with not only before the trustee's appointment, but in this instance, even before the bankruptcy cases were filed. While there is much zealousness in the contentions, there's nothing in the evidentiary record that even substantiates these allegations of activities that occurred prior to October of 2021. Again, the standard here is the court would have to find that the Bankruptcy Court's findings of good faith were clearly erroneous. Again, ample evidence in the record to support the Bankruptcy Court's finding of good faith with respect to all purchasers. Your Honors, we do believe that in this instance where you don't have a stay, where the evidence is clear that the purchasers acted in good faith, that their 363M does apply, that the reversal or modification of a sale order can't affect the validity of those sales, which again are consummated and sale proceeds just being distributed to creditors. In that instance, we do believe that it was appropriate to use this appeal as moot because there isn't any relief that could be fashioned at this point. I'm certainly happy to answer any questions. There were additional issues raised. I think they were amply briefed in our response brief. And there was a recent submission demonstrating that plans had also gone effective, right? That is correct, Your Honors, yes. So maybe that's... If we ever wanted to take up the issue of equitable mootness, which we may or may not, we'd have a discussion about that, right? Yes, Your Honor. Alright. You're not resting solely on that. You're not. You also believe that even if there was a stay, this should be affirmed? Yes, absolutely. Yes. So, and our brief walk through at length, the propriety of the court's ruling. To reverse, you would have to find there was an abuse of discretion in affirming the sale. The Bankruptcy Court, again, made detailed findings walking through both 363, and so totality as well as with respect to the finite, tangible personal property that was in dispute. As we discussed in our papers, there was the one small dispute with respect to whether certain of the equipment utilized to operate the radio stations was... That Mr. Stolz held some sort of interest in it. There was no dispute it was property of the estate. That was admitted. It was clearly admitted in the record. In fact, Mr. Stolz had actively sought relief affirming that that property was property of the estate, but then through the sale, claimed that he had some sort of interest. The record is clear that the original acquisition of the radio stations by the debtors included that tangible personal property. Each one of those purchase agreements filed with the FCC was in the record. The only contrary evidence, and I use that loosely, was Mr. Stolz's self serving statements that he, in fact, owned that there was no assignment, there was no other documented evidence supporting that whatsoever. There was no proof of claim filed by him either, was there? That is correct. Or a lawsuit saying, guess what, that's not yours, it's mine. That is also correct. Yeah, okay. Yes, thank you. I have one question about the allowance of the VCY claim. Your briefing talks about the use of a claim as bid currency, but that claim was not credit bid, was it? Didn't VCY pay cash for the full dollar amount of its bid? Absolutely, very good question. So it was not a credit bid. In negotiating the original stocking horse, VCY wasn't willing to increase its stocking horse bid, but what it would have agreed to do was to reduce its proof of claim. And so, Trustee Carmel sought that additional consideration. And then in conjunction with the bidding, ultimately in exchange for other concessions, the subsequent bid did not include that reduction, but it was not a credit bid. And it's not a situation where the trustee said, okay, the cash portion of the... This is hypothetical. The cash portion of the KEXP bid, for example, is less than the... Got that backwards. The cash portion of the VCY bid is less than the KEXP bid, but you should still approve the VCY bid because of this deal with the claim. That's not what happened, right? They were just comparing the cash portions of the bid, weren't they? Yes, that is correct. And in fact, the differential was, I believe, slightly less than 2.1 million compared with 3.75 million, so a meaningful increase when you look at dollars to dollars, absolutely. Thank you. That's all I've got. I have nothing more. Judge Corbett? No questions. Okay. Thank you very much. Thank you. And thanks to you and your absent cohort for your good arguments. This matter is under submission. We'll do our best to get your written decision as soon as we can. Thank you very much. Okay. And with that, I believe we are concluded. All rise. The session is now adjourned.
judges: Lafferty, Faris, Corbit